May it please the court. Alan Murray Robison was convicted by a jury after a one-week trial on three counts. Conspiracy involving the staging, fabrication of automobile accidents, and the submission of health insurance claims. Count two involving a much narrower charge of aiding and abetting the issuance of a specific check, a February 12, 2009, check by Encompass Insurance Company, allegedly for chiropractic treatment of a woman named Melissa Brown. Count nine was involved witness tampering with respect to two or three, rather, affidavits that Mr. Robison presented to two then prospective witnesses, both of whom read the affidavits and declined to sign them. As court-appointed counsel, I have raised appellate challenges to the convictions on count two and on count nine, both for the sufficiency of the evidence, albeit under different standards of review. With respect to the motions that I filed both during and after the trial, 18 U.S.C. 1512 B.1 criminalizes conduct, as relevant here, involving use of threats, intimidation, corrupt persuasion, or misleading conduct with respect to the affidavits that Mr. Robison presented to the prospective witnesses signed. There was no contention by the government in the indictment or at trial that there was any use of threats or intimidation. The allegation was that there was some type of corrupt persuasion or misleading conduct by Mr. Robison with respect to the affidavits. In our case, there was no such conduct, no evidence of that, and as a result, the conviction must be reversed. So the statute's got three different ways you can prove the crime? Intimidation, corrupt persuasion, or misleading? They didn't charge, and this case was not about intimidation. It was the other two. They charged corrupt persuasion and misleading conduct. The pattern charge focuses more, it looks like, on intimidation and corrupt persuasion. It doesn't really, the pattern doesn't get to misleading except in the notes, right? I agree with that, Your Honor. Yeah, so it's sort of an unusual... It is. But there was a paragraph, it looks like the district court slightly amended the pattern instruction and gave an instruction about misleading, and I take it you accepted that. The statement of law was correct. I do not challenge that here, Your Honor. Of course, as the district court instructed, it is not illegal. In fact, it is permissible for a criminal defendant to try to persuade a witness to testify in his or her favor. Am I right to protect against that? Because you're right, it's a dangerous little area to criminalize. But here, it looked to me like, both as to scienter and then as to an affirmative defense, the district court instructed and if you're just telling someone, make sure you read it and tell the truth. So you got sort of a double protection against Arthur Anderson, and I take it you then must have argued in closing argument, well, that's all my client was doing. He was just, he gave him what he thought was the best version, he said read it, but only tell the truth. Well, what he did, actually, was, and what the government relied on, is that they say, first of all, he talked in, he had conversations with his co-defendant, now co-appellant, Mr. Collins, about getting the affidavits in the first place. And in those conversations, they used a form of what the government's called a crude code. In fact, there were, what Mr. Collins did was use a form of pig Latin, basically, in conversations that he apparently knew were being recorded at the jail. But when you translate what they, what he said and what was discussed, there's nothing felonious about it. They discussed the fact that they were going to go and attempt to get the affidavits, specifically from Latasha Robinson. So why was he using pig Latin if there was nothing felonious, if it wasn't an effort to at least muffle or camouflage what he was actually saying? They didn't want the government to show up when he was there trying to get the affidavits. So that can't be the basis for supporting the conviction. The next thing they rely on is the fact that the affidavits themselves, the form of the affidavit is unusual. Well, and the content's false. Pardon me? The content's completely exculpatory and false. According to the witnesses, eventually, they wouldn't sign it. Right. It contains some exculpatory statements, but the form of the affidavit itself has nothing illegal or in any way, really, in any way that would be persuasive or would be misleading about the contents of the affidavit. Now, what they do also claim is the government also claims that Mr. Robinson told the witnesses that, well, Latasha Robinson says that he told her the lawyer had printed out the affidavit, and then Mr. Jashon, the liquor store operator who cashed some checks, that he told Mr. Jashon that the lawyer had prepared the affidavit. And that, of course, obviously, if you looked at the format of the affidavit and the scripture references that were contained on it, neither of the witnesses thought that the lawyer had prepared the affidavit. But again, there is nothing misleading about that statement with respect to the content of the affidavit. And I don't think that there's any way that the affidavit, by telling them that the affidavit was prepared by the lawyer, that that prevented them or persuaded them not to read it and not to make a decision as to whether the contents of the affidavit were accurate. The other thing that Latasha Robinson said with respect to Mr. Robinson's presentation of the affidavit was that he handed her the signature page first and that she had to ask, she says, what's up? And then he hands her the rest of the affidavit and in no way prevents her from reading it. She reads it and then she says, I'm not going to sign it. Is it your theory that he'd only be liable for witness tampering if they had signed the affidavit? No, not witness tampering under the statute. Nothing that he did was tampering with what the witness would have otherwise said. Well, that's the point. He made no attempt to mislead them about what he was asking them to say and made no attempt to get them to say something that they weren't already willing to say. No, but what I'm suggesting is that the affidavit, so your theory is that he would have only been guilty if he had succeeded and they had signed the affidavit. Or are you thinking he wouldn't have even been guilty then? But the whole point is he was influencing the witness to say something that both of them knew was not true. The only thing that he was, the influence, if there was, was by presenting an affidavit that had facts in it that the government says not true. And I think the statute clearly requires something more than that. He's got to have conduct that tries to cause them to do something that they would otherwise not be willing to do. Why doesn't that fall under corrupt persuasion? Because there's no, there's nothing corrupt about the way he's trying to persuade them. He's not, there's no real persuasion here at all, but he's not offering them anything, promising them anything that they're not entitled to if they will sign the affidavit. It all depends on what's in his head, right? Because the jury was properly told corrupt persuasion means to subvert the administration of justice. They're told that, and then you've got the affirmative defense instruction that you can't find him guilty if you think he was just trying to encourage them to testify truthfully. So it's just, why isn't it all before the jury, and they've got this constellation of circumstantial evidence that suggests he knew it was false and he was trying to induce them. That's sort of what they have. The statute requires that he do more than just give them an affidavit and ask them to sign it. There's got to be this element of misleading with respect to the contents of the affidavit. There's got to be some sort of persuasion other than will you sign this affidavit? Well, but didn't he show them the first page first? It was sort of, I thought the testimony as to each witness, they sort of would say, hey, here you go, and page number one, you want to sign it. And then they say, well, no, I'd sort of like to see the whole thing. The only, that's not true with respect to subordination at all. He told them, I'd like you to sign an affidavit. He comes back a couple of hours later. He gives them the affidavit, and Mr. Gichon reads it and then declines to sign it. The testimony is Natasha Robinson does say that he gave her the signature page first and that she looks at it and says, well, what's this? And then he hands her the rest of the affidavit without any further comment. And she reads it and says, I'm not signing this. Give me a for instance of what more you're saying the government would have to show. Give me a for instance. He put pressure on her to sign the affidavit. So you're saying it would take some, in addition to a verbal act, it would take some kind of physical act, attendant to it, standing over her, glowering over her. Not necessarily, but the Jefferson case that we cited, clearly the witness was being pressured there to do this, that we need your testimony to do this, and knowing that and clearly getting the witness to testify to something that the witness knew wasn't true and was unwilling to testify to, at least initially. It's the idea there's got to be some element of overcoming the will. If I might, just for a couple of minutes, I also wanted to address the count two conviction. And there are two prongs to the argument. First is that we have argued that the court has power and discretion to create the necessary complete concurrence between the count two and the count one convictions because the only thing that is not completely concurrent is the $100 special assessment. And relying on the Stovall case and also there's an unpublished decision that, in preparation for the argument I identified, which is United States v. Buda, in that case, as opposed to the Stovall case, the district court remitted the special assessment. I didn't understand the concurrent sentence. We only exercise that discretion when there's an error as to one or the other or where there's multiple, right? Yes. Okay. So what's the error that would even trigger whether we want to— The error is that there is no legally sufficient evidence to support the conviction on the aiding and abetting because the only connection between Defendant Robinson, as opposed to Defendant Collins, to that issuance of that check is the fact that Natasha Robinson says that she got a P.O. box for advanced Cairo at his request. The check was payable to advanced Cairo, and the indictment alleged that it was sent to the P.O. box, which was the P.O. box that Natasha Robinson obtained. But, in fact, as the face of the check shows and as the testimony of Charlotte Rowland, the Encompass adjuster, showed, it was sent to the street address. So the only connection that—possible connection to the issuance of that check with Mr. Robinson was not material to the issuance of the check itself and the mail fraud. Is that the thicket address? No, the thicket address is the address that they say the conspiracy was connected to, but this check was to the chiropractic clinic that didn't exist. Didn't exist, right. But it was sent to that street address, which actually is an address on Beltline Road. And no connection of Robinson to that? No, and when the accident itself occurred in June, he was incarcerated in Oklahoma, and the earliest evidence of his participation in the conspiracy is in October with respect to the P.O. boxes. But, again, there's no connection between Mr. Robinson and the issuance or the claim forms that were submitted for this Melissa Brown, whose treatment supposedly was covered by that check. All right. Thank you, Mr. Ashley. You have reserved time for rebuttal. Yes, sir. We'll now hear from the government. Ms. Birch. May it please the Court. Good morning. Amy Birch for the government. I'd like to first address the count two argument, and specifically the check was addressed to advanced care. That's the fake chiropractic clinic. You're a little bit soft. Yes, Your Honor. Your voice is just nice and soft. If you would just project just a little bit. I sure will. That's the fake chiropractic clinic that Mr. Robinson directed his girlfriend to get a P.O. box for. And she did that. His name was on that P.O. box, and it was their intent to have that check mailed to that P.O. box. The fact that the testimony was the check was actually mailed to an address on Beltline doesn't change what Mr. Robinson did, and that was participate in this scheme and try to get these fake chiropractic checks mailed to his P.O. box. How was that accomplished while he was in jail in Oklahoma? Well, it was all part of the scheme. He was participating with Mr. Collins, and the accident happened while he was in jail, but after he got out of jail and he moves and he hooks up with this scheme, he's the one that directs that P.O. box to be opened under that name for that chiropractic clinic. The only way I understand this theory to work out, if he was in jail in Oklahoma at the time, was for the adjusting of the accident with the insurance company to have occurred over a period of months so that the check didn't actually come in until after he had set up the P.O. box? That's correct. That's your argument? Okay. That's correct, Your Honor. And, in fact, this Beltline address doesn't exist. There is a place at that address, but the actual address itself, Suite C, the FBI agent testified it doesn't actually exist. So there's even a question in the record about how did they then actually obtain that check and cash it if it was really mailed to an address that didn't exist? Because we know that they got the check and they cashed it, and that's just a question that, because apparently no one quite realized during the trial that that was a difference. It's just a question that's open in the record. However, they did get the check, they did cash it, and in any event, it was his intent, Mr. Robison's intent, for that check to come to the P.O. box. The check was $4,700-some, right? I don't remember the amount of the check, Your Honor. Well, the amount of restitution tied to this is supposedly $12,000-some. Is that correct? Well, Mr. Robison was fully held responsible for restitution that only occurred after he joined the conspiracy, and I'm not specific about the amount on that count. If I may turn to Count 9. You know, it's not that hard a case, so you might be acquainted with the whole record. Yes, Your Honor. It was in the briefs, and I was just trying to refresh my recollection. Yes, Your Honor. That's the point. With regard to Count 9, Mr. Robison made an agreement with Mr. Collins. They discussed it in the jail calls. They used this unusual sort of code to talk about it, and then Mr. Robison actually attempted to get these affidavits from these two witnesses, and specifically he goes to Ms. Robinson, his girlfriend, and asks or says, I'd like you to sign this, gives her page 2, tells her a lawyer prepared it. She looks at it and, having some sense about her, says, I don't think a lawyer prepared it. I want to see the whole thing. Looks at the whole thing and refuses to sign it. A second time he goes to Mr. Deshawn, and actually to him presents two different affidavits, one saying that the checks were that Mr. Deshawn had cashed checks for somebody named Moe, and it's apparent from the jail calls that there's this effort to pin the culpability for this case on this mysterious Dr. Moe. And so he wants to get this affidavit signed to say that Dr. Moe is responsible. The second affidavit was to say I've never cashed a check for Mr. Collins, which is just patently false, completely false, had multiple times cashed checks for Mr. Collins at that liquor zoom-in store. And so it's the government's allegation that those were the acts that were corruptly persuading and misleading those witnesses into making these false statements and preparing these false affidavits to be used in the court. You didn't charge intimidation. Correct. Correct, Your Honor. You experienced corrupt persuasion, but then you would have to prove that the intent in his mind was to subvert the system of justice, right? Correct. And the jail calls bear that out because he talks in the jail calls about how we're going to get these documents prepared and that I'm going to be out on the big rig and it's going to be done, it's going to be over. And so they use this code to not get caught. I mean, there are multiple things that show this sort of guilty knowledge. Okay. See, this is a difficult statute to apply. But put aside even Arthur Anderson First Amendment, this is the one that years ago, several courts said the federal government was violating when they pay cooperating witnesses because that would be inducing witnesses to testify. So it's got to be the instructions have got to be written well. And the one that concerned me was the jury instruction. It looks like it says misleading conduct means knowingly submitting a writing that is false. But where does that what authority is there for that way of violating this crime? Because if someone walks up to a witness and says I've drafted the affidavit, this is what I think the probable cause is, Mr. Agent, take a look at it. If it's not correct, then don't sign it. That happens all the time. So if you give something that contains a falsehood, but you're at the same time saying you make sure you get it right, where's the crime? Your Honor, I think there's a distinction between somebody writing something down that they may not have gotten quite right, but they want the witness to make sure it's right and something that they write down knowing, absolutely knowing, that what they've written in there is false and that that's where the jury was cautioned that it can't just be a matter of that's what he wanted you to say because he thought that was right, but he really wanted you to testify truthfully. And that's where you ---- But the jury seems to have been told it's still a crime if you find that this defendant knowingly submitted a writing that is false. Where's that from? That's not the pattern instruction language. Your Honor, I believe the court was just trying to put its arms around something that, as you said, is a very difficult instruction. And they ---- I think the court, by giving that affirmative defense, takes care of any of those concerns because the jury then is instructed, yes, that it's knowingly making that false statement, but they have to also show that intention to mislead and it can't just be a matter of difference of opinion or confusion or the jury can't find them guilty. And so I believe that when you ---- The best evidence here, the best evidence that they were trying to corrupt is the jailhouse calls? The jailhouse calls establishes the agreement and shows their guilty knowledge, but also the contents of the affidavit, which are not questionable. This is not a close case. I mean, this is you never cashed a check for me. No, I cashed a check for you many, many times. That's not something that reasonable minds could have a different opinion. At trial, all three witnesses, all three of the people who refused to sign testified? There were two that refused to sign, but there were three affidavits. Two of those affidavits went to one witness, and they did both testify at trial, and they both testified to the patent falsity of what's inside. Were the two witnesses to say something false or not really? They believed that they were misled or that there was an attempt to mislead. They believed that the fact that he mentioned that an attorney had prepared it, the fact that he, that Mr. Robinson had presented, at least on the first witness, Ms. Robinson presented just the back page, the signature page, and then only let her see the content when she asked was that attempt. If the court doesn't have any other questions on counts 2 or 9, I'll be finished on Mr. Robinson. Do you have any response to his concurrency argument? Your Honor, I just don't believe that the court should exercise that jurisdiction here, and specifically in the Wray case where there are separate special assessments imposed, they really aren't true concurrent sentences, and for that reason we would ask the court to make a finding on the merits. All right. Thank you. All right. We'll back to you, Mr. Astley. Any rebuttal? Yes, Your Honor. We obviously recognize that there's not true concurrence at this point. Our whole point is that on that aspect of it is that we believe the court has discretion to create the complete concurrence and then the discretion to exercise that to vacate the sentence and suspend imposition of the sentence in accordance with the concurrent sentence doctrine. What does that avail your client? Reconsideration of the restitution or what? No. It avoids his conviction on the – or sentencing on the count 2 conviction and avoids the – for judicial economy purposes, avoids the necessity of this court considering the plain error argument that I've made with respect to his conviction on that point, on that count. Okay. With respect to the count 2 conviction, there is absolutely no evidence other than the P.O. box, the fact that Natasha Robinson went and procured the P.O. box that connects Defendant Robison to the issuance of that check. He had nothing to do with the preparation or submission of the claims for that accident and obviously was incarcerated and had nothing to do with the accident itself. But there does have to be for the aiding and abetting conviction to have any evidentiary support. There does have to be evidence that something he did was actually – that he actually knew that was going to be or could reasonably foresee that was going to be something that would aid in the issuance of that specific check. And because that check was sent to the street address rather than the P.O. box, there is nothing. With respect to the count 9 conviction, the statements that Mr. Robison made to Natasha Robinson, which are the only statements that are relevant to whether there was any evidence that he made or was seeking the affidavits to delay or prevent the testimony of the witnesses, her testimony was that he said he intended to plead guilty and therefore that if she would sign the affidavit, it would obviate the need for her to appear at the proceedings. And there is no evidence that, in fact, at the trial of this case, two of the defendants, the other two defendants that started the trial, ended up pleading guilty. So there were ongoing plea negotiations during the course of this case. And in Mr. Robison's case, obviously those plea negotiations, whatever they were, were not successful. But that doesn't mean that the fact that he went to trial in March meant that he did not intend to plead guilty or was considering pleading guilty back when he sought the affidavits from Natasha Robinson and from Saboor Jashan. And there's certainly no evidence that Mr. Robison knew that Natasha Robinson would still have to appear at any further proceedings if he pled guilty. It's reasonable to assume that he thought there would be no trial and that she, in fact, wouldn't have to appear if she gave the affidavit. So that statement cannot provide any evidence that he knowingly made the statement in order to delay or to prevent her from testifying at the trial. You know, obviously witness tampering sort of subverts the entire system. So it's a very serious crime, but it's got these difficulties associated with people preparing for a trial. Do you have any cases that you found? I'm just curious where appellate courts have reversed on the theory that you're pointing out, which is there just isn't enough evidence. This is too consistent with proper witness coaching. The cases I was able to identify are much more the variety that I think you referred to earlier, that there was affirmative intimidation cases, the threatening to witnesses, doing things to actually clearly put them. Those are the ones where convictions are upheld, but did you find anywhere a court reversed? Well, the only one really I can identify is the Arthur Anderson case. That's protected against here, at least with the jury instruction. But, you know, there really aren't. I really couldn't identify any other cases that are factually similar to this one. So for the reasons that are stated in the arguments today and in our brief, we respectfully request that the court reverse the count nine conviction and either vacate the count two conviction or reverse that under the plain error standard. All right. Thank you, Mr. Ashley. You are court appointed, representing Mr. Robson on the brief and in oral argument. Our court greatly appreciates the work of attorneys like you who take on these cases. We appreciate your having come here and ably represented your client. Thank you, sir. You're welcome.